UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANN BRANDL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Judge Joan B. Gottschall |
| v. | ) |
| | ) Case No. 09 C 6019 |
| SUPERIOR AIR-GROUND | ) |
| AMBULANCE SERVICE, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Ann Brandl brings this action against her former employer, Superior Air-Ground Ambulance Services, Inc. ("Superior"). She alleges that Superior violated Title VII when it terminated her for "behaving argumentatively," while similarly situated male colleagues displayed equally argumentative behavior without discipline (Count I). Ms. Brandl also alleges that her termination constituted retaliatory discharge (Court II) and violated the Illinois Whistleblower Act (Count III), because it was carried out in retaliation for her complaints about Medicare violations and her refusal to submit allegedly unsupported invoices to Medicare. Superior has moved for summary judgment, arguing that Ms. Brandl has failed to develop any factual support for a *prime facie* case of gender discrimination, as well as for her retaliation/Whistleblower Act claims. Superior also argues that Ms. Brandl lacks factual support for her claim for punitive damages. For the reasons set forth below, the Court denies Superior's Motion as to the Title VII claim (Count I), but grants the motion as to the retaliation/Whistleblower Act claims (Counts II and III).[1]

---

[1] Ms. Brandl's Amended Complaint also includes a claim for violation of the Illinois Wage Payment and Collection Act, alleging that Superior refused to pay her for unpaid vacation hours (Count IV). Superior does not move for summary judgment on that claim.

1

# I. BACKGROUND

The following facts are undisputed unless otherwise specified. Ann Brandl began working for Superior as a paramedic in 1998. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 16.) She received several promotions and was eventually named Vice President of Operations (Def. St. ¶¶ 18-21.) She served as one of three vice presidents and was supervised by the company's Chief Executive Officer, Dave Hill. (Def. St. ¶ 28.) As a Vice President of Operations, Ms. Brandl reviewed contract terms and service agreements between Superior and various medical facilities and monitored Superior's compliance with Medicare regulations. (Def. St. ¶¶ 54-56.) Ms. Brandl would notify Superior's CEO if she observed any practices that she believed violated Medicare regulations. (Pl. Rule 56.1(b)(3)(C) Statement (hereinafter "Pl. St.") ¶ 16.)

In January 2009, Terry Pahl joined Superior as its new Chief Financial Officer. (Pl. St. ¶ 17.) In the two months between Ms. Pahl becoming CFO and Ms. Brandl's termination, Ms. Brandl notified Ms. Pahl about the following practices she believed violated Medicare regulations: (1) submission of Medicare bills without proper documentation; (2) proposal of lower-than-authorized rates in contracts with Loyola and Illinois Masonic hospitals; and (3) comingling of Medicare client funds. (Pl. St. ¶ 17.)

The parties dispute the legitimacy of Ms. Brandl's Medicare compliance-related complaints. Superior contends, with support in the record, that it did not submit improper Medicare bills, that it was in compliance with Medicare regulations as to the Loyola and Illinois Masonic contracts, and that it was making changes to address comingling of Medicare client funds. (Def. Reply to Pl. St. ¶ 19.) Ms. Brandl contends, also with support in the record, that her complaints were legitimate. (Pl. St. ¶ 17.)

On February 26, 2009, Ms. Pahl and Summer Heil, Superior's General Counsel, met with Ms. Brandl and informed her that she was being terminated for behaving argumentatively. (Pl. St. ¶ 32.) They gave no other reason for the termination at that time. (*Id.*)

Whether Ms. Brandl was more argumentative than similarly situated male employees is genuinely in dispute. Ms. Brandl points to evidence in the record showing that argumentative and aggressive behavior, such as yelling and profanity, were commonplace among Superior's executive committee and that her behavior was not outside the norm. (Pl. St. ¶¶ 5-6.) Superior points to portions of the record indicating that other members of the executive committee were generally courteous and professional, and it was Ms. Brandl who was occasionally out-of-line. (Def. Rep. to Pl. St. ¶¶ 2-6.)

Superior does not dispute that Ms. Brandl was told that she was being terminated for behaving argumentatively. (Def. Reply to Pl. St. ¶ 32.) It does dispute, however, that Ms. Brandl's argumentativeness was the actual reason for her termination. Superior takes the position that Ms. Brandl was fired because she lied to Superior's CEO, Dave Hill, about the costs associated with implementing a new crew scheduling software program. Mr. Hill testified that Ms. Brandl stated that the software package would cost a total of $30,000-40,000, but Mr. Hill was skeptical and directed Ms. Brandl's staff to prepare a side-by-side comparison of all costs associated with the two software systems under consideration. (Def. St. ¶¶ 36-50.) In viewing that comparison, Mr. Hill learned that the system Ms. Brandl recommended had upfront fees of over $200,000, which she had not disclosed, and it would be much more expensive to implement than the competing software. (Def. St. ¶¶ 40-43.) Mr. Hill stated that the software review incident caused him to lose trust in Ms. Brandl and served as his sole motivation for terminating her employment. (Def. St. ¶¶ 50.)

Ms. Brandl, on the other hand, contends that the software review incident had nothing to do with her termination. She contends that Superior fired her either because she refused to participate in Medicare fraud and/or because of her gender.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether factual issues exist, the court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009).

Rule 56 mandates, however, that the party opposing a motion for summary judgment may not rest on the pleadings or mere speculation. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). It must instead affirmatively demonstrate, through the presentation of admissible evidence, that there is a genuine issue of material fact to be resolved at trial. *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). If there is a genuine dispute as to a material fact, the court must view the relevant evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010).

## III. ANALYSIS

Superior claims that Ms. Brandl cannot prevail on claims related to her termination because there was a legitimate, lawful basis for it, namely that she recommended a software system that was bad for the company and then lied about the costs associated with that system.

In response, Ms. Brandl argues that Superior's explanation for her termination is pretextual and there remains a genuine dispute concerning the lawfulness of Superior's motivation for terminating her.

## A. Title VII Sex Discrimination

To withstand Superior's motion for summary judgment on her Title VII gender discrimination claim, Ms. Brandl "must either point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue (the 'direct' method) or establish a prime facie case under the *McDonnell Douglas* formula (the 'indirect' method)." *Egonmwan v. Cook Cty. Sheriffs Dep't*, 602 F.3d 845, 849-50 (7th Cir. 2010). Ms. Brandl chooses to proceed under the direct method, and makes no attempt to engage in the indirect method of proof.

In its motion for summary judgment, Superior argues that Ms. Brandl fails in the direct method because she has no direct evidence of discrimination. The Seventh Circuit has repeatedly explained, however, that the direct method does not require direct evidence. *Davis v. Time Warner Cable*, 651 F.3d 664, 672 (7th Cir. 2011); *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011); *Poer v. Astrue*, 606 F.3d 433, 439 (7th Cir. 2010). A plaintiff may also satisfy the direct method by piecing together a "convincing mosaic" of circumstantial evidence pointing to a discriminatory reason for the employer's action. *Winsley v. Cook Cnty.*, 563 F.3d 598, 604 (7th Cir. 2009). The types of circumstantial evidence that can create this mosaic of proof, either individually or in combination, typically fall into three categories: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence

that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Good v. Univ. of Chi. Med. Ctr.*, No. 11-2679, 2012 WL 763091, at *3 (7th Cir. Mar. 12, 2012); *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

In this case, Ms. Brandl argues that the following facts support an inference of Superior's discriminatory animus: (i) the stated reason for her termination was that she behaved argumentatively while male colleagues behaved argumentatively without discipline, and (ii) Superior shifted its explanation for the termination after Ms. Brandl filed her charge of discrimination.

### i. Disparate Discipline

Evidence that an employer treated similarly situated employees outside the plaintiff's protected class more favorably can, in certain circumstances, support an inference of discriminatory animus. The "similarly situated" requirement serves to eliminate other possible explanations for the differing treatment, "such as differing roles, performance history, or decision-making personnel." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009). There can be differences between the plaintiff's and the proposed comparator's work situation, so long as those differences do not render the comparison effectively useless. *Humphries*, 474 F.3d at 405. In cases where the plaintiff alleges that she suffered disparate *discipline*, the plaintiff must show that the comparator (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in misconduct of comparable seriousness. *Coleman v. Donahoe*, 667 F.3d 835, 851-52 (7th Cir. 2012). Once the plaintiff has identified a similarly situated coworker, she must also show that the employer treated that coworker differently such that the disparate treatment, either

alone or with other evidence, leads directly to the conclusion that the employer's actions were discriminatory. *Good*, 2012 WL 763091, at *5.

In this case, there is evidence that two of Ms. Brandl's executive committee colleagues, David Curtis and Jay Washburn, exhibited highly argumentative behavior, including yelling profanity, throwing things, and breaking things. (Pl. St. ¶ 5-6.) Like Ms. Brandl, both of those executives were vice presidents and both reported to Superior's CEO, Dave Hill. There is evidence that neither Curtis nor Washburn were ever disciped for their behavior.[2] Because Superior's explanation, at the time of her termination, was that Ms. Brandl was being fired for being argumentative, there is some support for Ms. Brandl's contention that Superior held her to a different standard than her similarly situated male colleagues. Coupled with the additional circumstantial evidence discussed below, Ms. Brandl's evidence of disparate treatment could support a reasonable jury's conclusion that Superior terminated Ms. Brandl's employment at least in part because of her gender.

### ii. Shifting Justification

Ms. Brandl also argues that Superior's shifting explanation of the termination should serve as circumstantial evidence of discrimination. Generally, when an employer gives one explanation for an adverse employment action, and then changes its story, that shift may be considered as part of a mosaic of circumstantial evidence pointing to discrimination. *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). For example, in *Hasan v. Foley & Lardner LLP*, plaintiff was a Muslim law firm associate who was fired after the events that took

---

[2] With its Reply brief, Superior filed a supplemental affidavit from Dave Hill stating that Mr. Washburn was recently fired because Mr. Hill no longer trusted him. Superior references that affidavit and argues that Ms. Brandl was not subject to disparate discipline because she was terminated after a breach of trust, just like Mr. Washburn was terminated for a breach of trust. Superior misses the point. Brandl contends that Superior's "breach of trust" explanation is pretext and that she was actually terminated because she was held to a different standard than her equally-argumentative male colleagues. Because the affidavit fails to indicate that any male employee was disciplined for behaving argumentatively, it is irrelevant to the Court's comparator analysis.

7

place on September 11, 2001. 552 F.3d 520, 523 (7th Cir. 2008). He alleged that his termination was discriminatory, and pointed to evidence showing that the law firm had shifted its explanation for his termination. *Id.* Initially, plaintiff's supervisors testified that he was fired for unsatisfactory performance. *Id.* at 530. But after those witnesses' testimony was called into question by documents showing plaintiff had received positive evaluations, the law firm contended that plaintiff was terminated because there was not enough work to sustain his position. *Id.* The district court granted the law firm's motion for summary judgment, and the Seventh Circuit reversed, finding that plaintiff had presented enough circumstantial evidence to create a genuine issue of fact concerning the existence of a discriminatory motive for his termination. The court of appeals explained the significance of the shifting explanation evidence as follows:

> This contradictory evidence calls into question the credibility of the partners' deposition testimony; credibility determinations are reserved to the jury. Indeed, the district court acknowledged this inconsistency when it recognized that Mr. Hasan had presented a genuine issue of material fact on the question of performance. Issues of material fact cannot be resolved on summary judgment. The firm cannot, therefore, avoid trial by claiming that its real reason for firing Mr. Hasan was his supposed poor performance, when there is an issue of material fact as to whether this proffered reason is merely a pretext.

*Id.* (internal citations omitted).

In this case, Superior's initial explanation for Ms Brandl's termination was that she was behaving argumentatively. Then, after Ms. Brandl filed her claim of discrimination with the Equal Employment Opportunity Commission, Superior's justification shifted to the software review issue. Those inconsistent explanations could lead a reasonable jury to doubt Superior's credibility in now claiming that only the software review issue influenced the termination. Thus, contrary to Superior's contention, the fact that it has advanced a "good-faith basis" for terminating Ms. Brandl does not mandate summary judgment. Instead, it merely gives rise to a

8

factual dispute which must be resolved by a jury.

## B. Whistleblower Claims

Ms. Brandl also claims that her termination violated the Illinois Whistleblower Act and related Illinois public policy because it was carried out in retaliation for her refusal to violate Medicare regulations. The Illinois Whistleblower Act ("the Act") bars an employer from terminating an employee for disclosing the employer's illegal activity "to a government or enforcement agency," 740 Ill. Comp. Stat. § 174/15 (2011), or "refusing to participate in an activity that would result in a violation of State or federal law, rule or regulation," *id.* § 174/20. Superior concedes that Ms. Brandl "raised concerns regarding Superior's Medicare compliance," but argues that those complaints cannot form the basis of her claims because there is no evidence that she reported to an outside agency or refused to participate in any illegal activity, as required by the Act.

It is clear from the record that compliance was a significant aspect of Ms. Brandl's job. She was actively involved in ensuring that Superior's billing practices complied with Medicare regulations. (Def. St. ¶¶ 54-56.) She would review billing practices and report anything potentially problematic to the executive committee. (Pl. St. ¶ 16.) The record also indicates that Superior valued Ms. Brandl's attention to compliance issues, and generally took her advice to heart. (Def. St. ¶¶ 54-56.)

Although Ms. Brandl demonstrates that she raised a number of Medicare-related concerns throughout her tenure, she fails to provide factual support for her contention that she "refused to participate in an activity that would result in a [legal] violation." When asked to describe all of the compliance-related concerns she raised with Ms. Pahl, Ms. Brandl never testified that she was directed to submit unlawful bills and that she refused to submit unlawful bills. Ms. Brandl's

9

263-page deposition transcript instead reflects only that Ms. Brandl actively monitored Medicare compliance and also was expected to raise any compliance-related problems with the appropriate person. The closest she comes to providing factual support for her whistleblower claims is through a declaration she submitted at the summary judgment stage. There, Ms. Brandl states: "I specifically told Ms. Pahl [Superior's Chief Financial Officer] that I refused to submit the bills which lacked proper documentation because doing so would violate Medicare regulations." The problem with Ms. Brandl's declaration, however, is that it conflicts with her deposition testimony. In her deposition, Ms. Brandl was questioned at length about the nature of her interactions with Ms. Pahl regarding Medicare compliance. Ms. Brandl never said anything about refusing a direction from Ms. Pahl to submit improper bills.

Although the court must interpret the evidence in the light most favorable to Ms. Brandl, *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989), that does not allow her to contradict deposition testimony with later-filed contradictory affidavits. *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). If such contradictions were permitted, "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996). Thus, Ms. Brandl's newly filed declaration cannot by itself create a factual dispute concerning her refusal to participate in unlawful activities. Accordingly, the court grants Superior's motion for summary judgment as to the whistleblower claims (Counts II and III).

**C. Punitive Damages**

Superior has also moved for summary judgment on the issue of its liability for punitive damages under Title VII. Under Title VII, Ms. Brandl can recover punitive damages only if she

shows that Superior discriminated against her with malice or with reckless indifference to her rights. 42 U.S.C. § 1981a(b)(1). An award of putative damages is appropriate under the statutory standard where a plaintiff can show (1) that the employer acted with knowledge that its actions may have violated federal law, and (2) that the employees who carried out the discrimination were managerial agents acting within the scope of their employment. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999). If the plaintiff can make those two showings, the employer may still avoid liability for punitive damages if it can establish that it undertook good faith efforts to implement an anti-discrimination policy. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001).

In this case, Superior addresses the first element only, arguing that Ms. Brandl fails to show that Superior acted with the requisite mental state because there is a "complete absence of evidence of any conduct by Superior that was willful and wanton." As noted above, at this stage Ms. Brandl need only show that her employer knew that its actions might violate federal anti-discrimination law. Ms. Brandl presents evidence that Superior had an anti-discrimination policy and made efforts to inform management of that policy. (Def. St. ¶¶ 11.) From that evidence, a reasonable jury could conclude that Superior knew at the time of the termination that it might be violating federal law. Therefore, the evidence is sufficient to create a triable issue of material fact as to Superior's knowledge, and Superior's motion for summary judgment as to Title VII punitive damages is denied.

## IV. CONCLUSION

For the above reasons, the court denies Superior's motion for summary judgment as to Ms. Brandl's Title VII claim (Count I) and her related claim for punitive damages, but grants summary judgment as to Ms. Brandl's Whistleblower Act claims (Counts II and III).

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: April 25, 2012